# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **PARUS HOLDINGS, INC.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:25-CV-01722-ADA** |
| | § | |
| **MINTZ, LEVIN, COHN, FERRIS,** | § | |
| **GLOVSKY AND POPEO, P.C.,** | § | |
| **MICHAEL T. RENAUD,** | § | |
| **MICHAEL J. MCNAMARA,** | § | |
| *Defendants* | § | |
| | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE ALAN D. ALBRIGHT
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendants Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz"), Michael T. Renaud, and Michael J. McNamara's (together, "Defendants") motion to transfer, Dkt. 18, and all related briefing. After considering these filings and the relevant law, the undersigned will recommend that the District Judge grant Defendants' motion.

## I.    BACKGROUND

This is a legal-malpractice suit. Defendants represented Plaintiff Parus Holdings, Inc. ("Parus") in several patent infringement lawsuits in this District and related *inter partes* review proceedings. Dkt. 1, at 3. In connection with its representation during *inter partes* review, Defendants prepared a Patent Owners Response ("POR") arguing that the claims in one of Parus's patents, the '431 patent,

1

"antedated petitioners' alleged prior art such that it was not prior art at all." *Id.* at 3-4. The United States Patent and Trademark Office's Patent Trial and Appeal Board (the "Board") refused to consider this argument because the POR that Defendants prepared violated the Board's rules for the briefing. *Id.* at 4.[1] According to Parus, the Board then invalidated most of the claims of the '431 patent based on the prior art. *Id.* The Federal Circuit affirmed the Board's decision. *Id.* at 5.

Despite the POR mishap, according to Defendants, Parus obtained a total recovery of $11.5 million in cases Defendants filed on Parus's behalf and therefore owed Defendants a "success fee" of over $2.15 million. Dkt. 18, at 10. Parus refused to pay. *Id.* Defendants sued Parus in the District of Massachusetts to recover the success fee. *Id.* at 12. Parus filed this malpractice suit one week later, contending that the '431 patent is now largely invalid as a result of Defendants' negligence. Dkt. 1, at 5. Defendants moved to transfer this case to the District of Massachusetts under the first-to-file rule or, alternatively, 28 U.S.C. § 1404(a). Dkt. 18. Parus opposes the motion. Dkt. 20.

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have

---

[1] Parus summarizes the Board's decision as ruling "that because Defendants had violated 37 C.F.R. § 42.6(a)(3) by incorporating argument by reference and also had relied on evidence without explanation or identification of the relevant portions of the evidence, the Board would not consider Parus's arguments or evidence antedating the purported prior art." Dkt. 1, at 4.

consented." 28 U.S.C. § 1404(a). In considering a § 1404(a) motion, district courts typically evaluate the convenience of transfer to the parties and other public-interest considerations. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013). The private-interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public-interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The defendant must show there is "good cause" for transfer by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter *Volkswagen II*]). "When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected." *Id.* The decision whether to transfer rests within the sound discretion of the district court. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.

1989) (holding that the decision to transfer rests within the sound discretion of the court).

### III.   DISCUSSION

Parus's case should be transferred under 28 U.S.C. § 1404(a). Initially, this case could have been brought in the District of Massachusetts. Parus does not argue otherwise. *See* Dkt. 20. Because each Defendant is a citizen of Massachusetts, the District of Massachusetts could exercise personal jurisdiction over them. *See* Dkt. 1, at 5, 7, 8; *see* 28 U.S.C. § 1391(c)(2) (stating that a defendant entity resides in any judicial district in which it is subject to the court's personal jurisdiction); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (establishing that a corporation is subject to personal jurisdiction where it is incorporated and maintains its principal place of business). Additionally, venue would be proper in the District of Massachusetts under 28 U.S.C. § 1391(b), which provides that a civil action may be brought in (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" and (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

Having determined that this preliminary inquiry is satisfied, the undersigned next weighs the private- and public-interest factors.

### A.   The private-interest factors support transfer.

The private-interest factors counsel that transfer is appropriate. As stated above, the private-interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of

4

witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203.

1.    The relative ease of access to sources of proof favors transfer.

In considering the relative ease of access to sources of proof, courts look to where documentary evidence is stored. *See Volkswagen II*, 545 F.3d at 316. Defendants point out that the relative ease of access to sources of proof favors transfer because all of the documents relevant to this case are stored at Defendants' Boston office. Dkt. 18, at 18-19. Parus responds that it retains copies of Defendants' files and stores its own relevant records in Austin, and that regardless, the files are accessible in any location. Dkt. 20, at 19-21.

This is a legal malpractice case based on Parus's '431 patent POR. While Parus's documents related to "design, development, and features of its own products and patents" and certain documents held by underlying defendants may be somewhat relevant to the Court's understanding of the issues in the underlying litigation, *see id.* at 20-21, the question in this case is whether Defendants were negligent in their representation. Specifically, the issue is whether Defendants were negligent in committing acts or failures to act including failure to comply with briefing requirements, failing to cite specific evidence, incorporating arguments by reference, failing to cite certain evidence, and failing to supervise an associate attorney. *See* Dkt. 1, at 29-31. Therefore, the documents most relevant to this case are the attorneys' work product itself as well as any communications regarding that work

product. Given that Mintz is a Massachusetts law firm and Renaud and McNamara are Massachusetts-based attorneys—regardless of their admission to practice in Texas—the undersigned finds it is easier to access sources of proof relevant to the legal-malpractice claim in Massachusetts than in Texas.

Parus cites *Fintiv, Inc. v. Apple Inc.*, 6:18-CV-00372-ADA, 2019 WL 4743678, at *4 (W.D. Tex. Sep. 13, 2019), for the proposition that "there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district when the vast bulk of documents are electronic." Dkt. 20, at 20. Yet even if most document production in the underlying cases was electronic, much of that production is relevant only in a limited sense to the legal-malpractice claim here. Further, in *Fintiv*, the court acknowledged despite its "hope that the Fifth Circuit will consider … giv[ing] district courts the discretion to fully take into consideration the ease of accessing electronic documents," that "under Fifth Circuit precedent, the physical location of electronic document[s] does affect the outcome of this factor." 2019 WL 4743678, at *4; *see also LoganTree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 WL 1491097, at *2 (W.D. Tex. May 11, 2022) (acknowledging that "even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous" (citing *Volkswagen II*, 545 F.3d at 316)). The relative ease of access to sources of proof weighs in favor of transfer.

        2.     The availability of compulsory process to secure the attendance of unwilling witnesses slightly favors transfer or is neutral.

Under Federal Rule of Civil Procedure 45, a subpoena may command a person to attend a trial, hearing, or deposition only "within 100 miles of where the person

6

resides, is employed, or regularly transacts business in person" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B). The Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *See Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316). "The availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630-31 (5th Cir. 2022).

Defendants state that at least 28 attorneys, paralegals, and staff involved in the underlying proceedings—but no longer employed by Mintz—are more likely to fall within the District of Massachusetts's subpoena power based on their last known addresses, and that none of those witnesses reside in this District. Dkt. 18, at 20. Parus asserts that Defendants identify no actual unwilling witnesses and, in any event, the Court likely can exercise its subpoena power over witnesses from the underlying cases. Dkt. 20, at 21-22. Parus also argues "alternatively" that third-party witnesses are "likely to be beyond the radius of both this Court and the Massachusetts court." *Id.*

The undersigned finds that the availability of compulsory process in Massachusetts favors transfer. As emphasized above, this is a legal-malpractice case. The most important witnesses will be those who participated in Defendants' rendering of legal services, including attorneys, paralegals, and staff involved in the

underlying proceedings who may no longer be Mintz employees. Because these former employees most likely worked with Renaud and McNamara in Massachusetts, where Defendants are based, and are more likely to live within or near the District of Massachusetts based on last-known addresses, *see* Dkt. 18, at 20, compulsory process is more available there.[2]

Parus states this factor nonetheless weighs against transfer because four of its former employees reside in Texas and are thus more likely to fall within the Court's subpoena power. Dkt. 20, at 22. Parus explains that these former employees will "likely testify"[3] regarding source-code operations, damages, and technical questions about the products in the underlying suits. *Id.* Again, with the possible exception of damages, it is unclear how that testimony is relevant to whether Defendants, at their office in Boston, failed to comply with briefing requirements, failed to cite specific evidence, incorporated arguments by reference, failed to cite certain evidence, and failed to supervise an associate attorney working on the POR. *See* Dkt. 1, at 29-31. Further, even if these four former employees' testimony topics were relevant to the malpractice claim, more witnesses with relevant information are likely to reside

---

[2] Parus's argument that Defendants' stated plan to call 28 former employees is "disingenuous" because one of those employees did not enter an appearance on behalf of Parus is not well-taken given that many of the possible witnesses are non-attorneys and whether an attorney entered an official appearance in a case is not determinative of whether the attorney worked on the case or otherwise possesses relevant information. *See* Dkt. 20, at 21-22.

[3] Parus does not state whether these witnesses are willing or unwilling to testify. *See* Dkt. 20, at 22; *Planned Parenthood*, 52 F.4th at 630-31.

within the District of Massachusetts's subpoena power given that Defendants and their staff are based in Massachusetts.

It is true that Defendants do not specifically identify *unwilling* witnesses, as Parus points out. *See* Dkts. 18, at 20; 20, at 21-22. This factor should receive less weight. *Planned Parenthood*, 52 F.4th at 630-31; *cf. Bruck*, 30 F.4th at 434 (noting it was inappropriate to weigh this factor in favor of transfer where the movant did not identify any witness who was subject to compulsory process in the transferee state but not the transferor state). But because the remaining factors counsel transfer or are neutral, assigning this factor less weight does not change the outcome of Defendants' motion. Nor would treating this factor as neutral. *Cf. Bruck*, 30 F.4th at 434.

3.    The cost of attendance for willing witnesses favors transfer.

The convenience of willing witnesses is "often [] cited as the most significant factor in determining whether a case should be transferred[.]" *Noble v. Geo Grp., Inc.*, No. A-07-CA-968 LY, 2008 WL 2609208, at *5 (W.D. Tex. June 27, 2008) (citing 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3851 (3d ed. 2008)), *R. & R. adopted*, 2008 WL 11417068 (W.D. Tex. Aug. 7, 2008). With respect to the third factor, Defendants assert the cost of attendance of willing witnesses weighs in their favor given that Renaud, McNamara, and over 60 other attorneys, paralegals, and staff involved in the underlying case reside in the District of Massachusetts; by contrast, according to Defendants, it is unclear that any witness lives in this District. Dkt. 18, at 20-21. Parus responds that Renaud,

McNamara, and other Mintz lawyers are admitted to practice in this District and therefore may conveniently appear here, that Parus's CEO regularly travels to Austin for Parus business, and other out-of-state witnesses have agreed to travel to Texas. *Id.* at 22-23.

The undersigned agrees with Defendants that given the nature of this case, there are likely more willing witnesses in Massachusetts, where Defendants and their staff are based, than in Texas. Accordingly, the cost of conducting trial in Massachusetts for most relevant witnesses will likely be less. Whether Mintz lawyers, Parus's CEO, or other out-of-state witnesses could or would appear before the Court given their prior travel to Austin, *see* Dkt. 20, at 22-23, does not change this analysis, as their travel costs would remain high.[4]

Parus accuses Defendants of "gaming [] the system" based on their long list of potential witnesses, pointing to the Court's statement in *Fintiv* that it "rejected any suggestion that the appropriate method would be to simply count the number of identified (by name or by function) witnesses and compare the total numbers" between districts. *See* Dkt. 20, at 23; 2019 WL 4743678, at *4. But the court in *Fintiv*

---

[4] Parus also suggests the Court should decline to consider the cost to Defendants' proposed witnesses on the grounds that Defendants "do not provide names or suggestions of what relevant testimony they have." Dkt. 20, at 23; *see Mateos v. Select Energy Servs.*, 919 F. Supp. 2d 817, 823 (W.D. Tex. 2013) (stating a movant must specifically identify the key witnesses and their testimony). Yet Defendants do explain that the attorneys and staff will provide testimony regarding the legal services they rendered. Dkt. 18, at 21. And though Defendants do not list each of the 60 witnesses by name, they do identify two key witnesses: former Mintz partners Jinnie Reed and Drew DeVoogd. *Id.* at 20; *see Noble*, 2008 WL 2609208, at *6 (noting that while both parties should have provided more detail concerning the specific testimony they expected to obtain, the identification of witnesses combined with the factual allegations in the complaint demonstrated the likely residence of the majority of important non-party witnesses).

made this statement in the context of the first factor, where the court weighed the relative ease of access to sources of proof. *See* 2019 WL 4743678, at *4. Further, in concluding that the cost-of-attendance factor favors transfer, the undersigned does not merely count the number of witnesses on either side, but concludes that declining to transfer this action would cause a greater number of relevant witnesses to travel an unacceptably long distance to testify. *Cf. Volkswagen I*, 371 F.3d at 204-205 (noting that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"). Of course, the Court is unable to conduct trial in a place convenient to all witnesses. As such, this factor must weigh in favor of transfer. *See SQIP, LLC v. Cambria Co., LLC*, 728 F. Supp. 3d 447, 455 (E.D. Tex. 2024) (concluding the cost for willing witnesses favored transfer where the transferee district was "clearly more convenient for the majority of expected witnesses").

> 4.    All other practical problems that make trial of a case easy, expeditious, and inexpensive favor transfer.

Fourth, Defendants argue that all other practical problems favor transfer because trying this case in Austin will result in "wasted judicial resources, piecemeal litigation, and potentially conflicting judgments." Dkt. 18, at 22. Parus states only that all other practical problems weigh against transfer because its malpractice claim is not duplicative of Defendants' Massachusetts fee claim. *Id.* at 24.

While the undersigned agrees that this malpractice case is not simply "duplicative" of Defendants' Massachusetts fee claim, the cases nonetheless both

11

center the parties' obligations under their contract. Declining to transfer would therefore result in piecemeal litigation regarding those obligations. This case is also in its early stages, and the Court has not entered a scheduling order. This factor supports transfer.

###### B.    The public-interest factors favor transfer.

The public-interest factors likewise weigh in favor of transfer. Again, the public-interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203.

> 1.    The administrative-difficulties factor weighs slightly in favor of transfer.

The District of Massachusetts resolves cases 3.8 months faster than this District. *See* Dkts. 18, at 23; 20, at 24; 23, at 12 n.7. This relatively small difference weighs slightly in favor of transfer. *See Uniloc USA Inc. v. LG Elecs. USA*, No. 4:17-cv-0825-O, 2018 WL 3419175, at *3 (N.D. Tex. May 14, 2018) (concluding a four-month difference weighed slightly in favor of transfer).

> 2.    The local interest in having localized interests decided at home favors transfer.

The local-interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." *Bruck*, 30 F.4th at 435 (internal quotation marks omitted). "Important considerations

12

include the location of the injury, witnesses, and the Plaintiff's residence." *Id.* But the "place of the alleged wrong is one of the most important factors in venue determinations." *Id.*

Defendants argue this case should be transferred because the alleged malpractice occurred in Massachusetts, Mintz is headquartered in Massachusetts, Mintz's likely witnesses reside in Massachusetts, Massachusetts law will govern the case, and Massachusetts has a greater interest in resolving allegations that its attorneys committed malpractice. Dkt. 18, at 24-25. Parus counters that venue is proper in this District because Parus is headquartered in Texas, Defendants frequently practice in Texas, Defendants' alleged malpractice impacted Texas litigation, and the injury Defendants caused was felt in Texas. Dkt. 20, at 25.

The connections between the District of Massachusetts and the events giving rise to this suit are strongest. *See Bruck*, 30 F.4th at 435. As discussed, while Defendants may have filed suits on Parus's behalf in Texas, this case raises a legal-malpractice claim against Massachusetts-based attorneys relating to their work during an *inter partes* review proceeding in Washington, D.C. *See* Dkt. 1. While Parus may have felt the injury resulting from the alleged malpractice in Texas, where it is headquartered, the alleged wrong occurred in Massachusetts. *See Bruck*, 30 F.4th at 435. Further, most relevant witnesses are located in or around Massachusetts. *See* Dkt. 18, at 20. This factor is a closer call but ultimately weighs in favor of transfer.

13

3.    The familiarity of the forum with the law that will govern the case is neutral.

Defendants argue that because Massachusetts law will govern this case,[5] the District of Massachusetts is better able to handle it. Dkt. 18, at 27. The undersigned disagrees. The Fifth Circuit has stated that the familiarity factor "does not weigh in favor of transfer when both districts are equally capable of applying the relevant law." *In re TikTok, Inc.*, 85 F.4th 352, 365 (5th Cir. 2023) (internal quotation marks omitted). Because federal judges "routinely apply the law of a State other than the one in which they sit," the Fifth Circuit has "hesitated to find that this factor weighs in favor of transfer when there are no 'exceptionally arcane' features" of the applicable law defying comprehension by a federal judge sitting in the transferor state. *Id.* (quoting *Bruck*, 30 F.4th at 436).

Defendants identify no "exceptionally arcane" feature of Massachusetts law defying comprehension by the Court. *See* Dkt. 20; *id.* Thus, this factor is neutral.

4.    The conflict-of-laws factor is neutral.

As the parties agree, this factor is neutral because there is no question that Massachusetts law applies to this dispute. *See* Dkts. 18, at 27; 20, at 26.

\*    \*    \*

---

[5] Parus does not seriously dispute that Massachusetts law applies. *See* Dkt. 20, at 26 (stating that "[a]ssuming *arguendo* that Massachusetts substantive law governs Parus's negligence claims, this federal court sitting in diversity is certainly capable of applying Massachusetts tort law"). Instead, it states that the Court is familiar with the law applying to the underlying infringement cases. *Id.* Of course, patent-infringement standards do not apply to state negligence claims. Absent any evidence or argument to the contrary, the undersigned treats Parus's argument as accepting that Massachusetts law applies.

14

In sum, the undersigned finds (1) the relative ease of access to sources of proof favors transfer; (2) the availability of compulsory process to secure the attendance of witnesses slightly favors transfer; (3) the cost of attendance for willing witnesses favors transfer; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive favor transfer. Further, (1) the administrative difficulties flowing from court congestion slightly favor transfer; (2) the local interest in having localized interests decided at home favors transfer; (3) the familiarity of the forum with the law that will govern the case is neutral; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law is neutral. Because all the factors favor or are neutral with respect to transfer, the undersigned concludes Defendants have clearly demonstrated transfer is appropriate here. *Bruck*, 30 F.4th at 433. Thus, the undersigned will recommend that the District Judge grant Defendants' motion.

## IV.    RECOMMENDATION

In accordance with the above discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' motion to transfer, Dkt. 18, and direct the Clerk of the Court to transfer this case to the District of Massachusetts.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d

419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED April 8, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

16